UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CATO,<br><br>             Plaintiff,<br><br>     v.<br><br>M. DARST, et al.,<br><br>             Defendants. | No.  2:14-cv-0959 TLN KJN P<br><br><br>ORDER |

Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies.  (ECF No. 24.)  Alternatively, defendants request an evidentiary hearing as to any disputed factual issues.  (Id.)  For the reasons stated herein, the undersigned orders an evidentiary hearing.

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on June 10, 2014, (ECF No. 11), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

Legal Standard re:  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

4

Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996), should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at 1030-31.

////

---

[1] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

Where a prison system's grievance procedures do not specify the requisite level of detail for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120.

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d 1162.

Plaintiff's Claims

This action is proceeding on the original complaint against defendants Darst and Romero. (ECF No. 1.) All relevant events occurred at High Desert State Prison ("HDSP"). Plaintiff alleges that in March 2013, he was housed in administrative segregation ("ad seg"). (Id. at 3.) Plaintiff alleges that on March 6, 2013, defendant Darst threw a hot food tray at plaintiff, causing plaintiff to suffer pain. (Id.) Plaintiff alleges that on March 7, 2013, defendant Romero threw a hot food tray at plaintiff, causing plaintiff to suffer pain. (Id. at 4.) Plaintiff alleges that on

March 8, 2013, plaintiff begged defendant Darst for food because plaintiff had not received an evening meal in two days. (Id.) Defendant Darst told plaintiff that he would let him eat if he cleaned up the food on his cell door. (Id.)

Discussion

*Plaintiff's Evidence re: Administrative Grievances*

In his verified complaint, plaintiff alleges that in March 2013 he submitted an appeal regarding the alleged assaults to the HDSP appeals coordinator, via institutional mail. (ECF No. 1 at 6, 10.) In his verified opposition, plaintiff alleges that after he received no response to his first grievance, he wrote to HDSP officials. (ECF No. 27 at 4, 10.) A copy of this document, signed by plaintiff on March 27, 2013, is attached to plaintiff's opposition. (Id. at 10.) This document, titled "staff complaint," describes the alleged assaults and requests an investigation. (Id.) This document also states, "I hereby declare under penalty of perjury that the foregoing is true and sent to the appeals coordinator office at High Desert State Prison for processing written on a CDCR 602/CDCR602-A." (Id.)

In the verified opposition, plaintiff states that after he received no response to his March 27, 2013 staff complaint, he wrote a letter to the Director of Corrections. (Id. at 4.) A copy of this letter is attached to the opposition. (Id. at 12.) In this letter, dated April 14, 2013, plaintiff described the alleged assaults. (Id.) Plaintiff also wrote that "I have filed complaints (602) stipulating the facts herein but don't know if my complaints even made it to the appeals coordinator office. An investigation is needed." (Id.) According to defendants, this letter was forwarded to the HDSP Warden's office and a use of force investigation was initiated in response to this letter.[2] (ECF No. 24-14 at 6.)

In his opposition, plaintiff alleges that after receiving no response from anyone for three months, on June 9, 2013 he submitted an Inmate Request for Interview form, i.e., CDCR 22 form. (ECF No. 27 at 4, 15.) In this form, plaintiff alleged that in March 2013, he submitted a staff complaint against defendants Darst and Romero. (Id. at 15.) Plaintiff claimed that he had

---

[2] A use of force investigation does not satisfy the administrative exhaustion requirement of the PLRA. Panaro v. City of North Las Vegas, 432 F.3d 949, 953 (9th Cir. 2005).

1  received no response to his staff complaint. (Id.) Plaintiff stated that if ad seg officers were
2  throwing his 602s away, then he requested that the coordinator personally come and retrieve his
3  complaint. (Id.)
4        On June 11, 2013 prison officials responded to plaintiff's June 9, 2013 Inmate Request for
5  Interview. (Id.) The response stated that headquarters received a letter from plaintiff alleging
6  misconduct, and plaintiff was interviewed on April 27, 2013, apparently as part of the use of force
7  investigation. (Id.) The response advised plaintiff to submit his staff complaint to the "IAD," and
8  that a CDCR 602 form was attached. (Id.)
9        On June 23, 2013, plaintiff submitted a written request for the June 11, 2013 response to
10 his June 9, 2013 request for an in interview to be reviewed by a supervisor. (Id.) Plaintiff wrote
11 that on June 16, 2013, he submitted another staff complaint per the June 11, 2013 instructions.
12 (Id.) Plaintiff wrote that he had received no logging notice. (Id.) Plaintiff alleged that ad seg
13 staff had again thrown his complaint away. (Id.)
14       *Analysis*
15       The parties do not dispute that plaintiff did not pursue a grievance regarding the alleged
16 assaults to the third level of review. Instead, defendants' summary judgment motion addresses
17 plaintiff's claim that prison officials refused to process his grievances regarding the alleged
18 assaults. Defendants dispute plaintiff's claim that he filed grievances in March and June 2013.
19 The undersigned addresses these arguments herein.
20       Defendants argue that there is no record that plaintiff submitted a grievance in March
21 2013 regarding the alleged assaults. (See ECF No. 24-14 at 3-4.) For the following reasons, the
22 undersigned finds that the issue of whether plaintiff submitted a grievance in March 2013 is a
23 materially disputed fact.
24       In his verified complaint and opposition, plaintiff alleges that he submitted a grievance
25 regarding the alleged assaults in March 2013. Plaintiff alleges that when he did not receive a
26 response to this grievance, he submitted the March 27, 2013 staff complaint. In his April 14,
27 2013 letter to CDCR, plaintiff states that he filed complaints regarding the assaults but received
28 no response. This evidence is sufficient to create a dispute regarding whether plaintiff submitted

1   the initial grievance in March 2013 or the March 27, 2013 staff complaint.

2   The undersigned observes that plaintiff does not identify the date he submitted the initial grievance in March 2013, nor has he submitted a copy of it.  In addition, plaintiff's March 27, 2013 staff complaint does not mention the previously submitted grievance.  While these circumstances are not sufficient grounds to grant defendants' summary judgment motion, plaintiff may be required to address these matters at an evidentiary hearing.

Defendants also argue that there is no record that plaintiff submitted a grievance to the HDSP appeals office after receiving the June 11, 2013 response to his June 9, 2013 CDCR 22 form.  (See id. at 7.)  However, plaintiff wrote in his June 23, 2013 Request For Review By Supervisor form that he submitted the grievance on June 16, 2013, and received no response. Plaintiff makes the same claim in his verified opposition.  For these reasons, the undersigned finds that whether plaintiff submitted a grievance on June 16, 2013 is a materially disputed fact.

Defendants next argue that plaintiff's speculation that ad seg officials threw away his appeals is refuted by plaintiff's inmate appeal history.  Defendants observe that while plaintiff was housed in Facility D ad seg from March 5, 2013, to January 15, 2014 (see ECF No. 24-3 at 2), he submitted seven grievances.  (See ECF No. 24-14 at 3-4.)  In addition, while in ad seg, plaintiff submitted four appeals that were screened out.  (Id. at 5.)  Defendants argue that this history demonstrates that plaintiff had the opportunity to file appeals while in ad seg.  Defendants further argue that this history demonstrates that ad seg correctional officers were not interfering with plaintiff's ability to file appeals.

In Williams v. Paramo, 775 F.3d 1182 (9th Cir. 2015), the plaintiff argued that prison officials refused to process her administrative grievances.  The defendants argued that "remedies were available to [plaintiff] as evidenced by the multiple unrelated appeals that she was able to file successfully."  775 F.3d at 1192.  The Ninth Circuit rejected this argument:

> This argument is a virtual non-sequitur because it does nothing to rebut Williams's evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case. Other circuits have similarly concluded that defendants may not simply rely on the existence of an administrative review process to overcome a prisoner's showing that administrative remedies were not available to him. In Hemphill

9

> v. New York, for example, the Second Circuit held that merely showing that grievance mechanisms are in place does not end the inquiry into availability where the plaintiff claims that threats by prison officials made the remedy functionally unavailable to him. 380 F.3d 680, 687–88 (2d Cir. 2004); see also Dillon v. Rogers, 596 F.3d 260, 268–69 (5th Cir. 2010) (holding that records showing 53 other inmates had filed grievances during the period in question did not demonstrate that administrative remedy was available to plaintiff). Moreover, permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented her from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear. Albino, 747 F.3d at 1172.

Id.

Based on the Ninth Circuit's reasoning set forth above, the undersigned is not persuaded by defendants' argument that plaintiff's ability to pursue other unrelated grievances demonstrates that administrative remedies were available to him.

Defendants next argue that even assuming plaintiff submitted an appeal on June 16, 2013, as alleged in the CDCR 22 form, such appeal would have been untimely. The alleged assaults occurred on March 6 and 7, 2013. Defendants argue that under CDCR regulations, plaintiff had thirty calendar days after the alleged incidents to file timely grievances. See Cal. Code Regs. tit. 15, § 3084.6(c)(4). Defendants argue that the grievance filed by plaintiff on June 16, 2013, was filed more than thirty days after the alleged incidents.

While the June 16, 2013 appeal may have been filed more than thirty days after the assaults, the regulations provided that plaintiff could explain why the appeal was untimely. See Cal. Code Regs. tit. 15, § 3084.6(c)(4). Prison officials' failure to respond to plaintiff's first grievance, allegedly submitted in March 2013, may have rendered the June 16, 2013 appeal timely. Moreover, the grievances allegedly filed in March 2013 would have been timely. For these reasons, defendants are not entitled to summary judgment on grounds that plaintiff did not pursue timely administrative grievances.

Defendants also observe that plaintiff waited until June 9, 2013, to file the CDCR 22 form complaining that prison officials had failed to respond to the grievance he submitted in March. Defendants suggest that the length of time plaintiff waited to bring this matter to the attention of prison officials undermines his claim that he filed a grievance in March 2013. Prison officials

have thirty working days from the date of receipt by the appeals coordinator to respond to a first level grievance. Cal. Code Regs. tit. 15, 3084.8(c)(1).

Plaintiff submitted the CDCR 22 form after he allegedly submitted the staff complaint on March 27, 2013, and the April 14, 2013 letter informing prison officials that he had not received responses to his grievances. Taking all of these circumstances into account, the undersigned cannot find that the length of time plaintiff waited to submit the CDCR 22 form was so great that it completely undermines plaintiff's claim that he submitted a grievance in March 2013.

Defendants also argue that following his transfer from HDSP to California State Prison-Corcoran in January 2013, plaintiff could have submitted a grievance regarding the alleged assault. Defendants argue that plaintiff still had administrative remedies available to him after his transfer to Corcoran. Defendants argue that even though the grievance would have been late, plaintiff could have explained why the appeal was late. See Cal. Code Regs., tit. 15 § 3084.6(c)(4).

The undersigned is not persuaded by defendants' argument that a prisoner is obligated to continue exhausting administrative remedies after prison officials allegedly thwart his attempts at administrative exhaustion. As discussed by the Central District of California, unavailable remedies can excuse exhaustion because:

> The PLRA "does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010). An administrative remedy becomes unavailable for purposes of exhaustion if prison officials do not respond to properly filed grievances or if they otherwise use affirmative misconduct to thwart an inmate's attempts to exhaust. See Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010); Brown v. Valoff, 422 F.3d at 943 n. 18 (9th Cir. 2005).

Ekene v. Cash, 2013 WL 2468387, *4 (C.D.Cal.2013).

If HDSP prison officials destroyed plaintiff's grievances, as plaintiff alleges, or otherwise thwarted his attempts to pursue these grievances, then he was not required to file additional grievances following his transfer to Corcoran. Defendants are not entitled to summary judgment on this ground because the facts surrounding plaintiff's alleged attempt to exhaust administrative remedies are disputed.

Defendants next argue that plaintiff's claims that his appeals were thrown away is improbable given the process for collecting mail in ad seg. In support of this argument, defendants submitted the declaration of HDSP Correctional Sergeant Davis. (ECF No. 24-3.) Correctional Sergeant Davis has worked as a sergeant in the Facility D Ad Seg Unit of HDSP since May 2014. (Id. at 1.) Correctional Sergeant Davis describes the ad seg mail procedures:

> 4. Inmates housed in ASU [i.e., ad seg unit] are not restricted or limited from filing inmate appeals. Inmates in ASU submit inmate appeals via HDSP institutional mail. Mail is picked up every evening from Sunday through Thursday, during evening count. Evening count begins at 2115 (9:15 p.m.) and ends at about 2130 (9:30 p.m.), and is performed by officers on third watch. Third watch ends at 2200 (10:00 p.m.). First watch control booth officers generally arrive about 2150 (9:50 p.m.).
>
> 5. The evening count is performed by two officers. The count officers move down the tiers, proceeding from cell to cell and count the inmates. As they are moving from cell to cell counting the inmates, one officer takes mail from inmates. Generally, when collecting inmate mail, the officers do not stop at the cells, or open the cell door of the food port. Rather, inmates typically slide any mail to be collected out of the corner of the door of their cells for the count officers to collect. During count, an officer would not have to read, review, or even scan any inmate mail collected; if they did do this, they would not timely complete count. Once count is completed, the count officer who collected the mail immediately places the mail in a bag. That bag is then taken upstairs to the first watch control booth. The first watch control booth officer sorts the mail and searches it for contraband and illegal messaging. The control booth officer then separates and bundles the mail into two categories: institutional mail and outgoing mail. Inmate appeals (602) are considered institutional mail, and would be routed directly to the appeals coordinator's office.
>
> 6. Since inmate appeal form 602s are distinct from other items of inmate mail, the officer sorting the mail would be able to recognize that the form is a 602 simply from its appearance and the form number printed on it. It would be unnecessary for the officer to also read the content of the 602 before sorting them into the institutional mail stack for the appeals coordinator's office. Under CDCR regulations governing appeals, the appeals coordinator is responsible for reviewing and screening appeals.
>
> 7. Based on my experience working in the HDSP ASU, a standard program for the Facility D ASU would have been approximately 75-80 inmates in D-7 and about the same number in D-8 on any given day. In my experience, inmates in ASU file many inmate appeals and I have not personally gotten any complaints from inmates about lost 602 or 602s being "thrown away" by officers, nor have I ever heard of this happening. In addition, it would be a serious violation of policy and CDCR regulations for an officer to

>    "throw away" an inmate's 602 and the officer could be terminated for such action.
>
>    8. Plaintiff contends that he submitted an inmate appeal on June 16, 2013 and claims it was thrown away. June 16, 2013 was a Sunday. Sunday mail pick-up in ASU is very heavy, due to the fact that mail is not picked up on Friday or Saturday. The high volume of mail on Sunday makes it even more unlikely that officers would have the time or opportunity to go through the mail, locate a specific 602, read it and then "throw it away" as alleged by plaintiff.

(ECF No. 24-3 at 2-3.)

Defendants' argument that the procedures for picking up and processing ad seg grievances would not have allowed for ad seg prison officials to find and destroy plaintiff's grievance is persuasive. However, the procedures described above would not have precluded prison officials from interfering with plaintiff's grievances. Accordingly, defendants are not entitled to summary judgment on this ground at this time.

Defendants next argue that further proof that ad seg officers did not interfere with plaintiff's appeals is evident from the CDCR Form 22. Defendants observe that this form, sent through institutional mail, did reach the appeals office. Plaintiff alleges that his staff complaint, also sent through institutional mail, did not reach the appeals office. Defendants argue that if ad seg officers were throwing away plaintiff's appeals relating to defendants, it stands to reason that they would have also thrown away the CDCR Form 22, which also mentioned plaintiff's claims against defendants. The undersigned also finds this argument to be persuasive. However, at this stage of the proceedings, the undersigned cannot reject plaintiff's claim that prison officials destroyed his grievances because his CDCR 22 Form reached the appeals office.

Defendants argue that they are entitled to summary judgment because plaintiff's claims alleging that prison officials destroyed his grievances are too conclusory. Defendants cite Crayton v. Hedgpeth, 2011 WL 1988450 at *7 (E.D. Cal. 2011), in support of this argument. In the section of Crayton cited by defendants, the District Court found that plaintiff's claims alleging that his grievances were lost, stolen and destroyed were "too vague to effectively rebut defendants' claim that plaintiff failed to exhaust administrative remedies." 2011 WL 1988450 at *7. The district court went on to state,

13

> Plaintiff has not provided the court with any evidence that suggest his administrative remedies for this claim was obstructed. The allegation that some grievances were lost or destroyed is not sufficient to support the inference that plaintiff's administrative remedies was wrongfully obstructed for all of his claims, particularly when there is ample evidence that many of plaintiff's grievances were recorded and responded to through the director's level of review (Todd Decl., Exh. A). Since April 2007, plaintiff has filed approximately eighty inmate appeals, a number of which he has successfully exhausted (ibid.). Plaintiff has also submitted hundreds of pages worth of exhibits to this court, including many copies of inmate appeals and complaints.
>
> Plaintiff has failed to demonstrate that he inquired about the status of the appeals, or attempted to re-file the appeals once he received notice that they were screened out. Plaintiff has provided no basis to conclude that he made a bona fide effort to obtain review of his grievances, and that such review was "effectively unavailable." See Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010). In the absence of evidence of improper behavior, this court does not credit plaintiff's conclusory allegation that defendants destroyed his inmate appeal regarding this claim. Cf. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment). Accordingly, the federal allegations raised in Claims 14 are DISMISSED.

Id. at 7-8.

The instant case is distinguishable from Crayton. First, in Williams v. Paramo, supra, the Ninth Circuit rejected the argument relied on by the district court in Crayton that an inmate's ability to administratively grieve unrelated claims undermines the inmate's claim that he could not administratively exhaust the at-issue claim. Second, unlike the plaintiff in Crayton, plaintiff in the instant action inquired about the status of his appeals and sought to bring the assaults to the attention of prison officials when he submitted the March 27, 2013 staff complaint, the April 14, 2013 letter and the June 2013 CDCR 22 form. This record demonstrates that plaintiff has made more than a bare assertion that prison officials failed to process his grievances.

Whether plaintiff submitted grievances in March and June 2013, and whether prison officials destroyed or otherwise thwarted plaintiff's attempt to file these grievances, are disputed factual issues. Accordingly, an evidentiary hearing to address these issues is appropriate. See Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (court shall hold evidentiary hearing to decide disputed factual questions relevant to administrative exhaustion).

14

<u>Remaining Matters</u>

On January 14, 2014, plaintiff filed a motion for the production of inmate witnesses. (ECF No. 29.) Plaintiff requests that the court order inmate witnesses brought to court who may testify as to the merits of his claims. (<u>Id.</u>) This motion is premature as no trial has been set. Accordingly, plaintiff's motion for production of inmate witnesses is denied as premature.

On February 11, 2015, after defendants' summary judgment was fully briefed, plaintiff filed a "reply" to defendants' reply. (ECF No. 35.) Attached to this document is a copy of the staff complaint signed by plaintiff on March 27, 2013 regarding the alleged assault. Plaintiff attached the same staff complaint to his opposition. (ECF No. 27 at 10.)

On February 19, 2015, defendants filed a motion to strike plaintiff's reply to their reply as an improper pleading. (ECF No. 36.) Because a reply to a reply is not a proper pleading, defendants' motion to strike is granted.

On December 18, 2014, defendants filed a motion to modify the scheduling order. Good cause appearing, the dates set in the September 18, 2014 scheduling order are vacated. The discovery and dispositive motion filing dates will be reset following resolution of defendants' motion for summary judgment.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to modify the scheduling order (ECF No. 25) is granted; the dates set in the September 18, 2014 scheduling order are vacated and will be reset, if appropriate, following resolution of defendants' summary judgment motion;

2. Plaintiff's motion for production of witnesses (ECF No. 29) is denied;

3. Defendants' motion to strike (ECF No. 36) is granted;

4. Defendants' motion for summary judgment (ECF No. 24) is vacated; defendants' summary judgment motion will be reinstated following the evidentiary hearing;

////
////
////
////

5. The evidentiary hearing will be set by separate order.

Dated: July 20, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cat959.sj