UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES CATO,

           Plaintiff,

    v.

M. DARST, et al.,

           Defendants.

No.  2:  14-cv-0959 TLN KJN P

ORDER AND FINDINGS AND RECOMMENDATIONS

Introduction

       Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies.  (ECF No. 24.)

       On July 20, 2015, the undersigned vacated defendants' summary judgment motion and ordered an evidentiary hearing.  (ECF No. 41.)  The undersigned conducted an evidentiary hearing on November 9, 2015.  Accordingly, defendants' summary judgment motion is reinstated. For the following reasons, the undersigned recommends that defendants' summary judgment motion be granted.

       On February 1, 2016, the court received a letter from inmate Jesse Stephen King in support of plaintiff's claims against defendants.  (ECF No. 60.)  On February 8, 2016, defendants filed a motion to strike this letter on grounds that it did not originate from plaintiff and there is no

1

1  indication that inmate King is authorized to file documents on behalf of plaintiff.  (ECF No. 61.)

2  Good cause appearing, defendants' motion to strike is granted.

3  Legal Standard for Summary Judgment

4         Summary judgment is appropriate when it is demonstrated that the standard set forth in

5  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

6  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

8         Under summary judgment practice, the moving party always bears the initial

9  responsibility of informing the district court of the basis for its motion, and identifying those

10  portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

11  together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

12  of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.

13  R. Civ. P. 56(c)).

14         "Where the nonmoving party bears the burden of proof at trial, the moving party need

15  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

16  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

17  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

18  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

19  burden of production may rely on a showing that a party who does have the trial burden cannot

20  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

21  should be entered, after adequate time for discovery and upon motion, against a party who fails to

22  make a showing sufficient to establish the existence of an element essential to that party's case,

23  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

24  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

25  necessarily renders all other facts immaterial."  Id. at 323.

26         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

27  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

28  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

1    establish the existence of such a factual dispute, the opposing party may not rely upon the

2    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

3    form of affidavits, and/or admissible discovery material in support of its contention that such a

4    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

5    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

6    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

9    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

10   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

11   1564, 1575 (9th Cir. 1990).

12        In the endeavor to establish the existence of a factual dispute, the opposing party need not

13   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

16   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

18   amendments).

19        In resolving a summary judgment motion, the court examines the pleadings, depositions,

20   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

21   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

22   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

23   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

24   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

25   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

26   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

27   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

28   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

3

1    not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

2    trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

3          By contemporaneous notice provided on June 10, 2014, (ECF No. 11), plaintiff was

4    advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

5    Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

6    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

7    Legal Standard re:  Exhaustion of Administrative Remedies

8          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

9    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

10   prisoner confined in any jail, prison, or other correctional facility until such administrative

11   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

12   requirement applies to all inmate suits about prison life, whether they involve general

13   circumstances or particular episodes, and whether they allege excessive force or some other

14   wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

15         Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

16   741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

17   critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

18   also cautioned against reading futility or other exceptions into the statutory exhaustion

19   requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

20   a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

21   procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

22   "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

23   review process in accordance with the applicable procedural rules,' [] - rules that are defined not

24   by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

25   (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

26   (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

27   exhaustion.'") (quoting Jones, 549 U.S. at 218).

28   ////

4

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate now has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock, 549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[1]

---

[1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process.  Id. at 1032.

1    "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),

2    should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

3    2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

4    and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

5    defense meets its burden, the burden shifts to the plaintiff to show that the administrative

6    remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

7         A prisoner may be excused from complying with the PLRA's exhaustion requirement if

8    he establishes that the existing administrative remedies were effectively unavailable to him.  See

9    Albino, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected

10   on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell,

11   623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

12   2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

13   Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown

14   v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

15   appeal granted at second level and no further relief was available).

16        Where a prison system's grievance procedures do not specify the requisite level of detail

17   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

18   requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

19   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology

20   or legal theories unless they are in some way needed to provide notice of the harm being grieved.

21   A grievance also need not contain every fact necessary to prove each element of an eventual legal

22   claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

23   resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

24        If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

25   failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

26   Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino,

27   747 F.3d 1162.

28   ////

6

Plaintiff's Claims

This action is proceeding on the original complaint against defendants Darst and Romero. (ECF No. 1.)  All relevant events occurred at High Desert State Prison ("HDSP").  Plaintiff alleges that in March 2013, he was housed in administrative segregation ("ad seg").  (Id. at 3.) Plaintiff alleges that on March 6, 2013, defendant Darst threw a hot food tray at plaintiff, causing plaintiff to suffer pain.  (Id.)  Plaintiff alleges that on March 7, 2013, defendant Romero threw a hot food tray at plaintiff, causing plaintiff to suffer pain.  (Id. at 4.)  Plaintiff alleges that on March 8, 2013, plaintiff begged defendant Darst for food because plaintiff had not received an evening meal in two days.  (Id.)  Defendant Darst told plaintiff that he would let him eat if he cleaned up the food on his cell door.  (Id.)

Plaintiff's Evidence Regarding Exhaustion of Administrative Remedies Attached to His Complaint and Opposition to Defendants' Summary Judgment Motion

Plaintiff alleges that prison officials failed to process his administrative grievances regarding the alleged assaults.  The July 20, 2015 order directing that an evidentiary hearing be held described plaintiff's evidence regarding administrative exhaustion as follows herein.

In his verified complaint, plaintiff alleges that in March 2013 he submitted an appeal regarding the alleged assaults to the HDSP appeals coordinator, via institutional mail.  (ECF No. 1 at 6, 10.)  In his verified opposition to defendants' summary judgment motion, plaintiff alleges that after receiving no response to his first grievance, he wrote to HDSP officials.  (ECF No. 27 at 4, 10.)  A copy of this one page, handwritten document, signed by plaintiff on March 27, 2013, is attached to plaintiff's opposition.  (Id. at 10.)  This document is prepared on a sheet of paper, and not on a 602 administrative appeal complaint form.  (Id.)  This document, titled "staff complaint," describes the alleged assaults and requests an investigation.  (Id.)  At the bottom of this document, plaintiff wrote, "I hereby declare under penalty of perjury that the foregoing is true and sent to the appeals coordinator office at High Desert State Prison for processing written on a CDCR 602/CDCR602-A."  (Id.)

In the verified opposition, plaintiff states that after receiving no response to his March 27, 2013 staff complaint, he wrote a letter to the Director of Corrections.  (Id. at 4.)  A copy of this

letter, addressed to then California Department of Corrections and Rehabilitation ("CDCR") Director Kathleen Dickinson, is attached to the opposition.  (Id. at 12.)  In this letter, dated April 14, 2013, plaintiff described the alleged assaults.  (Id.)  Plaintiff also wrote that "I have filed complaints (602) stipulating the facts herein but don't know if my complaints even made it to the appeals coordinator office.  An investigation is needed."  (Id.)   According to defendants, this letter was forwarded to the HDSP Warden's office and a use of force investigation was initiated in response to this letter.   (ECF No. 24-14 at 6.)

In his opposition, plaintiff alleges that after receiving no response from anyone for three months, on June 9, 2013 he submitted an Inmate Request for Interview form, i.e., CDCR 22 form. (ECF No. 27 at 4, 15.)  A copy of this form is attached to plaintiff's opposition.  (Id. at 15.)  In this form, plaintiff alleged that in March 2013, he submitted a staff complaint against defendants Darst and Romero.  (Id. at 15.)  Plaintiff claimed that he received no response to his staff complaint.  (Id.)  Plaintiff stated that if ad seg officers were throwing his 602s away, then he requested that the coordinator personally come and retrieve his complaint.  (Id.)

On June 11, 2013 prison officials responded to plaintiff's June 9, 2013 CDCR 22 Inmate Request for Interview form.  (Id.)  The response stated that headquarters received a letter from plaintiff alleging misconduct, and plaintiff was interviewed on April 27, 2013, apparently as part of the use of force investigation.  (Id.)  The response advised plaintiff to submit his staff complaint to the "IAD," and that a CDCR 602 form was attached.  (Id.)

The section of the CDCR 22 form contains a section where an inmate may request a "supervisor review" of the response to the initial request for an interview.  The "Request for Supervisor Review" section of the CDCR 22 form attached to plaintiff's opposition is filled in by plaintiff.  (Id.)  This section, containing plaintiff's signature dated June 23, 2013, states that on June 16, 2013, plaintiff submitted another staff complaint per the June 11, 2013 instructions.  (Id.) Plaintiff wrote that he had received no logging notice.  (Id.)  Plaintiff wrote that ad seg staff had again thrown his complaint away.  (Id.)

////

////

8

July 20, 2015 Order

      The July 20, 2015 order addressed the arguments raised in defendants' summary judgment motion on which the undersigned found defendants were not entitled to summary judgment. This order also addressed why an evidentiary hearing was warranted.  The relevant portions of the July 20, 2015 order are set forth herein.

*Analysis*

      The parties do not dispute that plaintiff did not pursue a grievance regarding the alleged assaults to the third level of review.  Instead, defendants' summary judgment motion addresses plaintiff's claim that prison officials refused to process his prison grievances regarding the alleged assaults.  Defendants dispute plaintiff's claim that he filed grievances in March and June 2013.  The undersigned addresses these arguments herein.

      Defendants argue that there is no record that plaintiff submitted a grievance in March 2013 regarding the alleged assaults.  (See ECF No. 24-14 at 3-4.)  For the following reasons, the undersigned finds that the issue of whether plaintiff submitted a grievance in March 2013 is a materially disputed fact.

      In his verified complaint and opposition, plaintiff alleges that he submitted a grievance regarding the alleged assaults in March 2013.  Plaintiff alleges that when he did not receive a response to this grievance, he submitted the March 27, 2013 staff complaint.   In his April 14, 2013 letter to CDCR, plaintiff states that he filed complaints regarding the assaults but received no response.  This evidence is sufficient to create a dispute regarding whether plaintiff submitted the initial grievance in March 2013 or the March 27, 2013 staff complaint.

      The undersigned observes that plaintiff does not identify the date he submitted the initial grievance in March 2013, nor has he submitted a copy of it.  In addition, plaintiff's March 27, 2013 staff complaint does not mention the previously submitted grievance.  While these circumstances are not sufficient grounds to grant defendants' summary judgment motion, plaintiff may be required to address these matters at an evidentiary hearing.

      Defendants also argue that there is no record that plaintiff submitted a grievance to the HDSP appeals office after receiving the June 11, 2013 response to his June 9, 2013 CDCR 22 form.  (See id. at 7.) However, plaintiff wrote in his June 23, 2013 Request For Review By Supervisor form that he submitted the grievance on June 16, 2013, and received no response.  Plaintiff makes the same claim in his verified opposition.  For these reasons, the undersigned finds that whether plaintiff submitted a grievance on June 16, 2013 is a materially disputed fact.

      Defendants next argue that plaintiff's speculation that ad seg

9

officials threw away his appeals is refuted by plaintiff's inmate appeal history. Defendants observe that while plaintiff was housed in Facility D ad seg from March 5, 2013, to January 15, 2014 (see ECF No. 24-3 at 2), he submitted seven grievances. (See ECF No. 24-14 at 3-4.) In addition, while in ad seg, plaintiff submitted four appeals that were screened out. (Id. at 5.) Defendants argue that this history demonstrates that plaintiff had the opportunity to file appeals while in ad seg. Defendants further argue that this history demonstrates that ad seg correctional officers were not interfering with plaintiff's ability to file appeals.

In Williams v. Paramo, 775 F.3d 1182 (9th Cir. 2015), the plaintiff argued that prison officials refused to process her administrative grievances. The defendants argued that "remedies were available to [plaintiff] as evidenced by the multiple unrelated appeals that she was able to file successfully." 775 F.3d at 1192. The Ninth Circuit rejected this argument:

> This argument is a virtual non-sequitur because it does nothing to rebut Williams's evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case. Other circuits have similarly concluded that defendants may not simply rely on the existence of an administrative review process to overcome a prisoner's showing that administrative remedies were not available to him. In Hemphill v. New York, for example, the Second Circuit held that merely showing that grievance mechanisms are in place does not end the inquiry into availability where the plaintiff claims that threats by prison officials made the remedy functionally unavailable to him. 380 F.3d 680, 687–88 (2d Cir. 2004); see also Dillon v. Rogers, 596 F.3d 260, 268–69 (5th Cir. 2010) (holding that records showing 53 other inmates had filed grievances during the period in question did not demonstrate that administrative remedy was available to plaintiff). Moreover, permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented her from filing a particular grievance would force a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear. Albino, 747 F.3d at 1172.

Id.

Based on the Ninth Circuit's reasoning set forth above, the undersigned is not persuaded by defendants' argument that plaintiff's ability to pursue other unrelated grievances demonstrates that administrative remedies were available to him.

Defendants next argue that even assuming plaintiff submitted an appeal on June 16, 2013, as alleged in the CDCR 22 form, such appeal would have been untimely. The alleged assaults occurred on March 6 and 7, 2013. Defendants argue that under CDCR regulations, plaintiff had thirty calendar days after the alleged incidents to file timely grievances. See Cal. Code Regs. tit. 15, §

3084.6(c)(4).  Defendants argue that the grievance filed by plaintiff on June 16, 2013, was filed more than thirty days after the alleged incidents.

While the June 16, 2013 appeal may have been filed more than thirty days after the assaults, the regulations provided that plaintiff could explain why the appeal was untimely.  See Cal. Code Regs. tit. 15, § 3084.6(c)(4).   Prison officials' failure to respond to plaintiff's first grievance, allegedly submitted in March 2013, may have rendered the June 16, 2013 appeal timely.  Moreover, the grievances allegedly filed in March 2013 would have been timely. For these reasons, defendants are not entitled to summary judgment on the grounds that plaintiff did not pursue timely administrative grievances.

Defendants also observe that plaintiff waited until June 9, 2013, to file the CDCR 22 form complaining that prison officials failed to respond to the grievance he submitted in March.   Defendants suggest that the length of time plaintiff waited to bring this matter to the attention of prison officials undermines his claim that he filed a grievance in March 2013.  Prison officials have thirty working days from the date of receipt by the appeals coordinator to respond to a first level grievance.  Cal. Code Regs. tit. 15, 3084.8(c)(1).

Plaintiff submitted the CDCR 22 form after he allegedly submitted the staff complaint on March 27, 2013, and the April 14, 2013 letter informing prison officials that he had not received responses to his grievances.  Taking all of these circumstances into account, the undersigned cannot find that the length of time plaintiff waited to submit the CDCR 22 form was so great that it completely undermines plaintiff's claim that he submitted a grievance in March 2013.

Defendants also argue that following his transfer from HDSP to California State Prison-Corcoran in January 2013, plaintiff could have submitted a grievance regarding the alleged assault. Defendants argue that plaintiff still had administrative remedies available to him after his transfer to Corcoran.  Defendants argue that even though the grievance would have been late, plaintiff could have explained why the appeal was late.  See Cal. Code Regs., tit. 15 § 3084.6(c)(4).

The undersigned is not persuaded by defendants' argument that a prisoner is obligated to continue exhausting administrative remedies after prison officials allegedly thwart his attempts at administrative exhaustion.   As discussed by the Central District of California, unavailable remedies can excuse exhaustion because:

> The    PLRA   "does   not   require   exhaustion   when circumstances render administrative remedies 'effectively unavailable.'"  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).  An administrative remedy becomes unavailable for purposes of exhaustion if prison officials do not respond to properly  filed  grievances  or  if  they  otherwise  use affirmative misconduct to thwart an inmate's attempts to

exhaust. <u>See</u> <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010); <u>Brown v. Valoff</u>, 422 F.3d at 943 n. 18 (9th Cir. 2005).

<u>Ekene v. Cash</u>, 2013 WL 2468387, *4 (C.D.Cal.2013).

If HDSP prison officials destroyed plaintiff's grievances, as plaintiff alleges, or otherwise thwarted his attempts to pursue these grievances, then he was not required to file additional grievances following his transfer to Corcoran. Defendants are not entitled to summary judgment on this ground because the facts surrounding plaintiff's alleged attempt to exhaust administrative remedies are disputed.

Defendants next argue that plaintiff's claims that his appeals were thrown away is improbable given the process for collecting mail in ad seg. In support of this argument, defendants submitted the declaration of HDSP Correctional Sergeant Davis. (ECF No. 24-3.) Correctional Sergeant Davis has worked as a sergeant in the Facility D Ad Seg Unit of HDSP since May 2014. (<u>Id.</u> at 1.) Correctional Sergeant Davis describes the ad seg mail procedures:

> 4.   Inmates housed in ASU [i.e., ad seg unit] are not restricted or limited from filing inmate appeals. Inmates in ASU submit inmate appeals via HDSP institutional mail. Mail is picked up every evening from Sunday through Thursday, during evening count. Evening count begins at 2115 (9:15 p.m.) and ends at about 2130 (9:30 p.m.), and is performed by officers on third watch. Third watch ends at 2200 (10:00 p.m.). First watch control booth officers generally arrive about 2150 (9:50 p.m.).

> 5.   The evening count is performed by two officers. The count officers move down the tiers, proceeding from cell to cell and count the inmates. As they are moving from cell to cell counting the inmates, one officer takes mail from inmates. Generally, when collecting inmate mail, the officers do not stop at the cells, or open the cell door of the food port. Rather, inmates typically slide any mail to be collected out of the corner of the door of their cells for the count officers to collect. During count, an officer would not have to read, review, or even scan any inmate mail collected; if they did do this, they would not timely complete count. Once count is completed, the count officer who collected the mail immediately places the mail in a bag. That bag is then taken upstairs to the first watch control booth. The first watch control booth officer sorts the mail and searches it for contraband and illegal messaging. The control booth officer then separates and bundles the mail into two categories: institutional mail and outgoing mail. Inmate appeals (602) are considered institutional mail, and would be routed directly to the appeals coordinator's office.

> 6.   Since inmate appeal form 602s are distinct from other items of inmate mail, the officer sorting the mail would be

12

able to recognize that the form is a 602 simply from its appearance and the form number printed on it. It would be unnecessary for the officer to also read the content of the 602 before sorting them into the institutional mail stack for the appeals coordinator's office. Under CDCR regulations governing appeals, the appeals coordinator is responsible for reviewing and screening appeals.

7. Based on my experience working in the HDSP ASU, a standard program for the Facility D ASU would have been approximately 75-80 inmates in D-7 and about the same number in D-8 on any given day. In my experience, inmates in ASU file many inmate appeals and I have not personally gotten any complaints from inmates about lost 602 or 602s being "thrown away" by officers, nor have I ever heard of this happening. In addition, it would be a serious violation of policy and CDCR regulations for an officer to "throw away" an inmate's 602 and the officer could be terminated for such action.

8. Plaintiff contends that he submitted an inmate appeal on June 16, 2013 and claims it was thrown away. June 16, 2013 was a Sunday. Sunday mail pick-up in ASU is very heavy, due to the fact that mail is not picked up on Friday or Saturday. The high volume of mail on Sunday makes it even more unlikely that officers would have the time or opportunity to go through the mail, locate a specific 602, read it and then "throw it away" as alleged by plaintiff.

(ECF No. 24-3 at 2-3.)

Defendants' argument that the procedures for picking up and processing ad seg grievances would not have allowed for ad seg prison officials to find and destroy plaintiff's grievance is persuasive. However, the procedures described above would not have precluded prison officials from interfering with plaintiff's grievances. Accordingly, defendants are not entitled to summary judgment on this ground at this time.

Defendants next argue that further proof that ad seg officers did not interfere with plaintiff's appeals is evident from the CDCR Form 22. Defendants observe that this form, sent through institutional mail, did reach the appeals office. Plaintiff alleges that his staff complaint, also sent through institutional mail, did not reach the appeals office. Defendants argue that if ad seg officers were throwing away plaintiff's appeals relating to defendants, it stands to reason that they would have also thrown away the CDCR Form 22, which also mentioned plaintiff's claims against defendants. The undersigned also finds this argument to be persuasive. However, at this stage of the proceedings, the undersigned cannot reject plaintiff's claim that prison officials destroyed his grievances because his CDCR 22 Form reached the appeals office.

Defendants argue that they are entitled to summary judgment because plaintiff's claims alleging that prison officials destroyed his

13

grievances are too conclusory. Defendants cite <u>Crayton v. Hedgpeth</u>, 2011 WL 1988450 at *7 (E.D. Cal. 2011), in support of this argument. In the section of <u>Crayton</u> cited by defendants, the District Court found that plaintiff's claims alleging that his grievances were lost, stolen and destroyed were "too vague to effectively rebut defendants' claim that plaintiff failed to exhaust administrative remedies." 2011 WL 1988450 at *7. The district court went on to state,

> Plaintiff has not provided the court with any evidence that suggest his administrative remedies for this claim was obstructed. The allegation that some grievances were lost or destroyed is not sufficient to support the inference that plaintiff's administrative remedies was wrongfully obstructed for all of his claims, particularly when there is ample evidence that many of plaintiff's grievances were recorded and responded to through the director's level of review (Todd Decl., Exh. A). Since April 2007, plaintiff has filed approximately eighty inmate appeals, a number of which he has successfully exhausted (<u>ibid.</u>). Plaintiff has also submitted hundreds of pages worth of exhibits to this court, including many copies of inmate appeals and complaints.

> Plaintiff has failed to demonstrate that he inquired about the status of the appeals, or attempted to re-file the appeals once he received notice that they were screened out. Plaintiff has provided no basis to conclude that he made a bona fide effort to obtain review of his grievances, and that such review was "effectively unavailable." <u>See</u> <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010). In the absence of evidence of improper behavior, this court does not credit plaintiff's conclusory allegation that defendants destroyed his inmate appeal regarding this claim. <u>Cf.</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment). Accordingly, the federal allegations raised in Claims 14 are DISMISSED.

<u>Id.</u> at 7-8.

The instant case is distinguishable from <u>Crayton</u>. First, in <u>Williams v. Paramo</u>, <u>supra</u>, the Ninth Circuit rejected the argument relied on by the district court in <u>Crayton</u> that an inmate's ability to administratively grieve unrelated claims undermines the inmate's claim that he could not administratively exhaust the at-issue claim. Second, unlike the plaintiff in <u>Crayton</u>, plaintiff in the instant action inquired about the status of his appeals and sought to bring the assaults to the attention of prison officials when he submitted the March 27, 2013 staff complaint, the April 14, 2013 letter and the June 2013 CDCR 22 form. This record demonstrates that plaintiff has made more than a bare assertion that prison officials failed to process his grievances.

Whether plaintiff submitted grievances in March and June 2013,

14

and whether prison officials destroyed or otherwise thwarted plaintiff's attempt to file these grievances, are disputed factual issues. Accordingly, an evidentiary hearing to address these issues is appropriate. See Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (court shall hold evidentiary hearing to decide disputed factual questions relevant to administrative exhaustion).

(ECF No. 41 at 8-14.)

Evidentiary Hearing

As indicated above, the purpose of the evidentiary hearing was to address the issue of whether prison officials thwarted plaintiff's ability to file administrative grievances regarding his claims against defendants.

Prior to the evidentiary hearing, on October 27, 2015, the parties had a telephonic status conference before the undersigned. At this telephonic status conference, the parties agreed that plaintiff submitted his first March 2013 grievance on March 17, 2013.

Thus, plaintiff is claiming that he submitted the following grievances/requests regarding the alleged assaults: 1) grievances submitted March 17, 2013 and June 16, 2013; 2) "staff complaint," written on paper, submitted March 27, 2013; 3) April 14, 2013 letter addressed to CDCR Director Kathleen Dickinson; 4) June 9, 2013 CDCR 22 Inmate Request for Interview Form and June 23, 2013 request for a supervisor to review response to June 9, 2013 request.

The undersigned herein summarizes the relevant evidence presented at the evidentiary hearing. The transcript from this hearing was filed on February 17, 2016.

*Defendants' Witnesses*

HDSP Sergeant Davis testified that on March 17, 2013, plaintiff was housed in Facility D, Building 8, which is in the administrative segregation ("ad seg") unit of HDSP. (Reporter's Transcript ("RT") at 9.) Sergeant Davis testified regarding the procedures for inmates housed in ad seg to submit their inmate appeal 602 forms. Sergeant Davis testified that in the ad seg unit, 602 grievances are collected nightly, with the mail, Sunday through Thursday by the floor officers. (Id. at 10.) The mail is generally collected on Third Watch at about 2115 hours, i.e., 9:15 p.m., with the count. (Id.) Sergeant Davis testified that during the count, one floor officer will count the inmates while another floor officer moves ahead or behind of him collecting the

15

mail, i.e., two floor officers conduct the count/mail pick-up.  (Id. at 11.)

Inmates get their mail, including grievances, to the floor officers by sliding it through a space in the cell door near the top.  (Id. at 11.)  The mail hangs out and the floor officer will walk by and collect it.  (Id.)  After all of the mail is collected, the floor officer takes it to the staff office in the Ad Seg Unit ("ASU") and places it in a large canvas bag.  (Id.)  The mail bag generally stays in the office for 20 to 25 minute minutes.  (Id. at 15.)  Then, the First Watch officer will take the bag to the control booth.  (Id.)  The First Watch control booth officer then screens the mail.  (Id. at 13.)

Sergeant Davis testified that if an officer were to intentionally throw away or destroy mail, it would be terminable misconduct.  (Id. at 13.)  Sergeant Davis testified that while he worked as a sergeant in the HDSP ad seg unit, he did not have any reports or complaints of officers throwing away or mishandling inmate mail or 602s.  (Id.)  Sergeant Davis also testified that if an inmate believed that his mail was being mishandled, he could submit a CDCR form 22 regarding the alleged mishandling.  (Id. at 14.)  A CDCR form 22 requests an interview with prison staff regarding a problem.  (See Defendants' Exhibit B.)  Sergeant Davis testified that while legal mail has to be signed for by the officer who collects the mail, 602s are not signed for.  (RT at 16-17.)

Lacy Lopez, the HDSP Appeals Coordinator, testified that the time limit for submitting inmate grievances is 30 calendar days from the event.  (Id. at 23.)  Ms. Lopez testified that normally, the appeals office would not accept anything other than a 602 form to begin the grievance process.  (Id. at 21.)  Ms. Lopez testified that plaintiff's April 14, 2013 letter addressed to CDCR Director Kathleen Dickinson, would not be accepted as sufficient to exhaust administrative remedies.  (Id. at 21-22.)

Ms. Lopez testified that if an inmate sent a letter to the appeals office complaining about an improper use of force, her office would initiate a use of force investigation.  (Id. at 22.)  A use of force investigation would involve her office contacting the facility where the event occurred.  (Id.)  Next, the facility where the event occurred would conduct a videotaped interview and complete a CDCR 3014 form, which are reviewed by the sergeant and associate warden.  (Id.)
////

16

Ms. Lopez testified that a use of force investigation is separate from the 602 process.  (Id.) If an inmate complained about an improper use of force in a 602, her office would send the complaint to the hiring authority to determine whether the complaint should be assigned for a staff complaint inquiry.  (Id. at 23.)

Ms. Lopez testified that HDSP records indicated that plaintiff had not filed any 602s regarding his administrative appeals not being processed or reviewed.  (Id. at 45.)  Ms. Lopez testified that if an inmate submitted an appeal he believed was not being responded to, he would be encouraged to submit a CDCR Form 22 to the appeals coordinator.  (Id. at 43.)  Ms. Lopez testified that her office has received CDCR Forms 22s from inmates "once or twice" complaining that their grievances were not being processed.  (Id. at 44.)  In response, someone from her office would go out and talk to the inmate or else give them another 602 to fill out.  (Id.)  Ms. Lopez said that her office would accept as timely the 602 from the inmate who had filed the CDCR Form 22 alleging that his prior 602 was not responded to, even if the later 602 was not filed within the time set forth by the regulations.  (Id. at 45.)

Ms. Lopez also testified that she had no knowledge of plaintiff's April 14, 2013 letter addressed to Kathleen Dickinson.  (Id. at 50.)  This letter states, in part, that plaintiff filed grievances regarding his claims against defendants but he does not know if they made it to the appeals coordinator.  (ECF No. 27 at 12.)  Ms. Lopez testified that if she had received this letter, she would probably have brought plaintiff another 602, had him fill it out, then brought it back to process. (RT at 50.)  She testified that a grievance filed by plaintiff raising his claims against defendants under these circumstances would probably have been treated as timely.  (Id. at 51.)

HDSP Appeals Analyst Bolls testified that she responded to the CDCR 22 form submitted by plaintiff on June 9, 2013.  (Id. at 57.)  She testified that that the form alleged assault and battery, so she pulled up "our IATS system" and saw that no appeal regarding these allegations had been received.  (Id.)  In response, she provided plaintiff with a blank 602.  (Id. at 58.)  A copy of this form submitted by plaintiff on June 9, 2013, and responded to be defendant Bolls on June 11, 2013 was admitted into evidence as defendants' exhibit B.  As discussed above, the CDCR form 22 contains a section for inmates to request a review by a supervisor of the first response by

17

1   prison staff.  (See Defendants' Exhibit B.)  Defendants' Exhibit B contains no request by plaintiff

2   for a supervisor to review the response by defendant Bolls.  (Id.)  In other words, this section is

3   empty.

4          As discussed above, in support of his opposition, plaintiff submitted the CDCR 22 form

5   containing defendant Bolls' response.  (ECF No. 27 at 15.)  Unlike the form submitted by

6   defendants, this form contains a request by plaintiff for a review by a supervisor, dated June 23,

7   2013.  (Id.)  Ms. Bolls testified that prior to the evidentiary hearing, she searched her files for this

8   CDCR form 22 with the section requesting a review by a supervisor completed.  (RT at 59.)  Ms.

9   Bolls could not find this form.  (Id.)  Ms. Bolls testified that the absence of such a form in the

10  prison records indicates that plaintiff did not submit a form containing a request for review by a

11  supervisor.  (Id.)

12         Defendants then called as witnesses the two floor officers working the Third Shift in the

13  ad seg unit of Facility D8 on March 17, 2013, i.e., Sergeant Hastey and Officer Antram.  As

14  testified to by Sergeant Davis, these two floor officers conducted the count and collected the mail

15  on that date.

16         Sergeant Hastey testified that on March 17, 2013, he worked as a floor officer in the ad

17  seg unit of Facility D8 at HDSP on third watch.  (Id. at 66-68.)  As a floor officer, his duties

18  included picking up the mail from inmates.  (Id. at 66.)  The inmates would stick the mail through

19  a slot in their door.  (Id.)  Sergeant Hastey testified that he would put the mail in a mailbag as he

20  collected it.  (Id.)  Sergeant Hastey had no recollection of the events of March 17, 2013.  (Id. at

21  67.)

22         Sergeant Hastey testified that as a floor officer, his duties did not include sorting,

23  screening or searching the mail.  (Id. at 69.)  Sergeant Hastey testified that he ordinarily did not

24  have time to read or look at the mail that he picked up from inmates.  (Id.)  After the mail was

25  collected and put in the mailbag, he would give it to the control booth officer.  (Id.)  Sergeant

26  Hastey testified that when he worked in the HDSP ad seg unit as a floor officer, he did not

27  interfere with any inmate 602s.  (Id.)  He testified that he did not throw away or destroy any 602s

28  belonging to plaintiff.  (Id. at 69-70.)  He testified that if he had thrown away or destroyed an

1    inmate's 602, he could have been disciplined or terminated.  (Id. at 70.)

2           Sergeant Hastey testified that because March 17, 2013 was a Sunday, there would have

3    been a lot of mail being picked up.  (Id. at 72-73.)  He also testified that inmate 602s were

4    somewhat noticeable, if they were not put in a separate envelope, because they were on a green

5    form.  (Id. at 73.)

6           Correctional Officer Antram testified that he was the other floor officer on March 17,

7    2013, in the ad seg unit of Facility D8 at HDSP.  (Id. at 75.)  Officer Antram testified that when

8    he collected the mail, he picked it up and put it in the mailbag.  (Id. at 77.)  Officer Antram

9    testified that when he picked up the inmate mail, he did not ever specifically look for inmate

10   602s.  (Id. at 77-78.)  Officer Antram testified that it was the job of the First Watch Control Booth

11   Officer to screen the mail.  (Id. at 78.)  Officer Antram testified that he had not ever interfered

12   with or destroyed or otherwise thrown away any 602 forms.  (Id.)  Officer Antram testified that if

13   he had engaged in this conduct, he would most likely be fired.  (Id.)

14          Officer Antram testified that he had probably worked with defendant Darst, sitting with

15   counsel at the defense table during the evidentiary hearing, during his (Antram's) 13 years of

16   employment with CDCR.  (Id. at 80.)  He testified that he had most likely worked with defendant

17   Darst in ad seg, but he could not remember.  (Id. at 81.)  Officer Antram also testified that he

18   could not recall plaintiff.  (Id.)

19          Officer Jones testified that on March 18, 2013, he worked as the Control Booth Officer on

20   the First Watch in D8 at HDSP.  (Id. at 83.)  He testified that his duties included going through

21   the mail bag to separate the different kinds of mail, including legal mail, 602s and requests for

22   interviews.  (Id. at 84.)  Officer Jones would put the mail into separate piles.  (Id.)  Officer Jones

23   would skim the letters to determine if they contained possible threats to the institution or

24   referenced escapes or gang related stuff.  (Id. at 84-85.)  He testified that he did not review the

25   602s "much," because the inmates were not going to write about escapes, etc. in their grievances.

26   (Id. at 85.)  Officer Jones testified that he did not ever interfere with or throw away any inmate

27   602s.  (Id. at 86.)  He also testified that he did not hear about First Watch Control Officers

28   interfering with inmate grievances.  (Id.)  He also testified that no correctional officer had ever

19

1   asked him to throw out a 602.  (Id.)  Officer Jones testified that it was not his duty to review the

2   602s to see if they complied with rules and regulations.  (Id. at 87.)

3       Officer Jones testified that he did not recall working with defendant Darst in the D unit at

4   HDSP.  (Id. at 88.)  Officer Jones testified that defendant Darst did not look familiar to him.  (Id.)

5       Officer Jones testified that he could not recall there ever being a situation where he came

6   in as the First Watch Control Booth Officer and found mail that had been misplaced by a previous

7   shift or that should have gone out.  (Id. at 90-91.)

8       *Plaintiff's Testimony*

9       Plaintiff testified that on March 17, 2013, he put his 602 containing his claims against

10  defendants in an unsealed u-save-em envelope.  (Id. at 96.)  Plaintiff slid the envelope out of the

11  slide of the door for mail pickup, and it was later picked up.  (Id.)  After receiving no reply to this

12  grievance, he submitted another grievance on March 27, 2013.  (Id. at 96-97.)  Plaintiff received

13  no response to this grievance.  (Id. at 97.)  On April 14, 2013, plaintiff wrote the letter to CDCR

14  Director, Kathleen Dickinson.  (Id.)  On April 29, 2013, plaintiff was videotaped as part of the

15  use of force investigation, initiated as a result of his April 14, 2013 letter.  (Id.)

16      Plaintiff testified that on May 3, 2013, defendant Romero said to plaintiff, "I thought

17  better of you."  (Id. at 98.)  Defendant Romero then pointed to his shirt collar to show that he now

18  had sergeant stripes.  (Id.)  He then said to plaintiff, "This is what they do to guys like me, they

19  promote me."  (Id.)

20      Plaintiff testified that on June 9, 2013, he submitted his CDCR 22 form stating that he had

21  not received a response to his grievance against defendants.  (Id.)  Plaintiff testified that Ms. Bolls

22  responded by giving him a 602 form, but no one came to see him.  (Id. at 99.)  Plaintiff testified

23  that on June 16, 2013, he submitted another 602 via institutional mail.  (Id.)  After receiving no

24  response to this grievance, on June 23, 2013, he testified that he submitted a request for a

25  supervisor to review Ms. Boll's response to his CDCR 22 form.  (Id.)

26      When asked why he waited until March 17, 2013, to submit his grievance regarding the

27  alleged incidents involving defendants on March 6 and 7, 2013, plaintiff testified that he waited

28  because he was trying to be sneaky.  (Id. at 104.)  Plaintiff testified that both defendants were

stationed "right there," so he had to wait until he thought it was "safe enough for me to do so and there wouldn't be any further retaliation…" (Id. at 105.) Plaintiff testified that he did not keep a copy of his March 17, 2013 grievance because he was afraid that if he asked for a copy of it to be made, the officer making the copy would tell defendants. (Id. at 106.) Plaintiff admitted that if he filed a staff complaint or a 602, the defendants would be made aware of it. (Id.) Plaintiff testified that by that time, the "higher ups" in the prison would know about his claims. (Id. at 107.)

Plaintiff's testified that he knew that he submitted his grievance on March 17, 2013 because he kept a calendar, and that date had a circle around it and the notation "602." (Id. at 107) A copy of this calendar, which is for the year 2013, was admitted into evidence. As noted by the undersigned at the evidentiary hearing, the months of January and February contain no notations. Every day in March is circled, except for March 1-4. Every day in April is circled. May 1-9 are circled, with the notation "602" next to May 8. May10-17 contain "x's" through them, and the remainder of the dates in May contain slashes through them, with May 22 also being circled. June 1-3 contain slashes, and June 5 is circled. The rest of June contains no notations, as do the rest of the months except for August 21, which is circled.

Plaintiff testified that the circled dates had no significance. (RT at 108-09.) Plaintiff testified that on March 17, 2013 he wrote "602" next to that date, i.e., the same date he claims he submitted the grievance. (Id.) Plaintiff testified that the slashes and x's also had no significance. (Id. at 110.)

Plaintiff admitted that he filed other 602s while in ad seg regarding "disciplinary, living conditions, legal, canteen," and these grievances got through. (Id. at 114.) Plaintiff speculated that these grievances were processed because they did not involve particular officers. (Id.)

Plaintiff speculated that the reason prison officials had no record of his June 23, 2013 Form 22 requesting a supervisor's review is that it "never made it." (Id. at 119.) Regarding the second 602 he allegedly submitted in June 2013, plaintiff speculated that it was never responded to because, "[i]n my mind, you know, I'm already dealing with the conspiracy." (Id. at 120.)

////

21

1   Plaintiff admitted that his calendar contained no notation indicating that he submitted a

2   602 in June 2013.  (Id. at 121.)  Plaintiff also admitted that he did not keep a copy of this 602.

3   (Id. at 125.)

4   Discussion

5   For the following reasons, the undersigned finds that the evidence and testimony

6   presented by defendants met their burden of demonstrating that plaintiff failed to exhaust

7   administrative remedies.  Through his testimony and evidence, plaintiff did not meet his burden

8   of demonstrating that administrative remedies were not available to him.

9   At the outset, based on Appeal Coordinator Lopez's testimony, the undersigned finds that

10  plaintiff's March 27, 2013 "staff complaint" would not have exhausted administrative remedies

11  because it was not prepared on a 602 form.  This handwritten document was prepared on a sheet

12  of paper.  Also based on Appeal Coordinator Lopez's testimony, the undersigned finds that

13  plaintiff's April 14, 2013 letter addressed to CDCR Director Kathleen Dickinson would not have

14  exhausted administrative remedies as it was not prepared on a 602 form.  While this letter caused

15  a use of force investigation to be initiated, a use of force investigation does not satisfy the

16  administrative exhaustion requirement of the PLRA.  Panaro v. City of North Las Vegas, 432

17  F.3d 949, 953 (9th Cir. 2005).

18  For the reasons stated herein, the undersigned finds that plaintiff's testimony that he

19  mailed grievances on March 17, 2013, and June 16, 2013, is not credible.

20  At the evidentiary hearing, defendants presented credible evidence refuting plaintiff's

21  claim that he filed a grievance on March 17, 2013, regarding the alleged assaults.  The three

22  officers responsible for processing the mail on March 17, 2013, including inmate grievances, i.e.,

23  Officers Hastey, Officer Angram and Officer Jones, persuasively and credibly testified that they

24  did not tamper with any grievance filed by plaintiff on that date.  Defendants also presented

25  evidence in support of their summary judgment demonstrating that prison officials have no record

26  of any grievance filed by plaintiff regarding the alleged assaults.  (See ECF No. 24-14

27  ////

28  ////

1   (declaration by HDSP Appeals Coordinator Clark).  This evidence and testimony indicates that

2   plaintiff did not file any grievance on March 17, 2013.[2]

3          Plaintiff's failure to present any documentary evidence of the March 17, 2013, and June

4   16, 2013 grievances also undermines his claim that he filed a grievance on those dates.  While

5   plaintiff had copies of the March 27, 2013 staff complaint, the April 13, 2013 letter addressed to

6   CDCR Director Kathleen Dickinson, and his June 2013 CDCR Form 22, he had no copies of

7   either the March 17, 2013 or June 16, 2013 grievances.  Under these circumstances, plaintiff's

8   failure to keep copies of these grievances undermines the credibility of his testimony that he

9   actually submitted them to prison officials.  The undersigned is not persuaded by plaintiff's

10  testimony that he did not ask for a copy to be made of the March 17, 2013 grievance because he

11  was afraid the officer making the copy would tell defendants about the grievance.

12         The undersigned also finds that plaintiff's calendar, admitted into evidence at the

13  evidentiary hearing, is not credible evidence regarding his mailing of the grievances.  This

14  calendar contains the notation "602" next to March 17, 2013.  However, this calendar contains no

15  notations reflecting the filing of the June 16, 2013 grievance or any of the other documents

16  plaintiff allegedly submitted to prison officials regarding the incident involving defendants, such

17  as the March 27, 2013 staff complaint.  These circumstances undermine the credibility of

18  plaintiff's claim that he recorded the mailing of the March 17, 2013 grievance on March 17, 2013.

19         In addition, defendants submitted evidence in support of their summary judgment motion

20  that plaintiff submitted seven grievances in 2013 that were accepted for review and nine

21  grievances that were screened out, i.e., not accepted for review.  (ECF No. 24-14 at 5-6.)

22  Plaintiff's 2013 calendar contains the notation "602" next to only two dates, i.e., March 17, 2013,

23  and May 8, 2013.  Plaintiff's failure to note on his calendar the other fourteen grievances he

24  submitted in 2013 further undermines the credibility of his testimony that he mailed the March

25  ―――――――――――
    [2]   The undersigned acknowledges that affirmative actions by prison officials that prevent
26  exhaustion, "even if done innocently," are grounds for excusing compliance with the exhaustion
    requirement.  Albino v. Baca, 697 F.3d 1012, 1034 (9th Cir. 2010).  In the instant case, the
27  undersigned finds that there is no evidence that plaintiff filed a grievance on March 17, 2013.
    The undersigned does not find that plaintiff mailed the grievance on March 17, 2013, and it was
28  not processed due to "innocent" mishandling.

                                                    23

1    17, 2013 grievance on March 17, 2013.  Instead, the record suggests that plaintiff added the "602"

2    notation to this date well after the March 17, 2013, perhaps in anticipation of the instant litigation.

3              As discussed in the July 20, 2015 order, plaintiff submitted documents referencing the

4    March 17, 2013, and June 16, 2013 grievances he allegedly filed regarding the incident involving

5    defendants, i.e., the March 27, 2013 staff complaint, the April 4, 2013 letter to Kathleen

6    Dickinson and June 2013 CDCR 22 form.  Considering these documents in the light of the entire

7    record, including the evidence presented at the evidentiary hearing, the undersigned finds that

8    these documents are not persuasive evidence that plaintiff filed the grievances alleged.

9              Plaintiff's staff complaint, filed March 27, 2013, contains the following statement at the

10   bottom:  "I hereby declare under penalty of perjury that the foregoing is true and sent to the

11   Appeals Coordinator Office at High Desert State Prison for Processing Written on a CDCR

12   602/CDCR 602 A."  (ECF No. 27 at 10.)  Plaintiff claims that this statement is in reference to the

13   grievance submitted on March 17, 2013.  The undersigned finds that the interpretation of this

14   statement by plaintiff is not supported by the record.  Instead, the undersigned finds that although

15   this statement references a 602, it is clearly intended as a proof of service of the March 27, 2013

16   staff complaint on the Appeals Coordinator.   This interpretation is supported by the fact that this

17   document does not specifically mention the grievance allegedly filed by plaintiff ten days earlier

18   on March 17, 2013.  For these reasons, the undersigned finds that the March 27, 2013 staff

19   complaint is not evidence that plaintiff filed a grievance on March 17, 2013.

20             Plaintiff's June 9, 2013 CDCR 22 form states that, "During the month of March 2013 I

21   submitted a staff complaint on the assault and battery…"  (ECF No. 27 at 15.)  Plaintiff goes on

22   to write, "If you haven't received my complaint, then ad seg officers are throwing away my

23   602s..."  (Id.)  It now appears that plaintiff's June 9, 2013 CDCR 22 form refers to the staff

24   complaint submitted by plaintiff on March 27, 2013, as the CDCR 22 form specifically references

25   a "staff complaint."  Accordingly, the undersigned finds that the June 9, 2013 CDCR form is not

26   evidence of plaintiff's administrative grievance allegedly filed on March 17, 2013.

27             The April 14, 2013 letter to CDCR Director Kathleen Dickinson states, "I have filed

28   complaints (602) stipulating to the facts herein but don't know if my complaints even made it to

1   the appeals coordinator office.  An investigation is needed."  (Id. at 12.)  Plaintiff argues that this

2   statement is meant to reference the grievance he filed on March 17, 2013.  For the reasons

3   discussed herein, the undersigned finds that this statement is neither sufficient nor credible

4   evidence that plaintiff filed a grievance regarding the alleged assaults on March 17, 2013.

5           The April 14, 2013 letter states that plaintiff filed "complaints (602)" regarding the

6   alleged assaults but he had "no idea" whether these grievances made it to the Appeals

7   Coordinator's Office.  However, this letter does not identify the dates plaintiff allegedly filed

8   these grievances.  In addition, if plaintiff filed a grievance on March 17, 2013, prison officials had

9   thirty working days to respond to the grievance.  See Cal. Code Regs. tit. 15, § 3084.8(c)(1).

10  Thirty working days had not passed from March 17, 2013 when he submitted his April 14, 2013

11  letter to Kathleen Dickinson.  These circumstances suggest that the statement in the April 17,

12  2013 letter that plaintiff does know whether his grievances made it to the Appeals Coordinators

13  Office did not apply to any grievance filed by plaintiff on March 17, 2013.

14          Other than plaintiff's testimony, the April 14, 2013 letter is the only possible reference in

15  the record to the grievance plaintiff claims he filed on March 17, 2013.  Because of the strong

16  evidence presented by defendants indicating that plaintiff did not file a grievance on that date, and

17  the lack of any other evidence submitted by plaintiff supporting his claim that he filed a grievance

18  on that date, the undersigned finds that the April 14, 2013 letter is not sufficient to meet plaintiff's

19  burden of demonstrating that he filed a grievance on March 17, 2013.

20          The record also suggests that plaintiff's claim that he filed a grievance on June 16, 2013,

21  is not credible.  The only evidence supporting this claim, other than plaintiff's testimony, is his

22  statement in the Request for Supervisor Review section of the CDCR Request for Interview form.

23  However, as discussed above, the record suggests that plaintiff did not submit this request, as

24  alleged and may have completed this section of the form in anticipation of the instant litigation.

25          Accordingly, for the reasons discussed above, the undersigned finds that defendants have

26  met their burden of demonstrating that plaintiff failed to exhaust his administrative remedies.

27  Plaintiff has not met his burden of demonstrating that administrative remedies were not available

28  to him, as he alleges.

1     Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike (ECF No. 61)

2   is granted; and

3     IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF

4   No. 24) be granted.

5     These findings and recommendations are submitted to the United States District Judge

6   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7   after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10   objections shall be filed and served within fourteen days after service of the objections.  The

11   parties are advised that failure to file objections within the specified time may waive the right to

12   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   Dated:  May 2, 2016

14

15                                    KENDALL J. NEWMAN
                                    UNITED STATES MAGISTRATE JUDGE

16

17

18   Cato959.evi

19

20

21

22

23

24

25

26

27

28